UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| Bryan C. Carrone and Raymond K. Landry, | * | |
| Individually and on behalf of themselves | * | |
| and all others similarly situated | * | |
| | * | |
| Plaintiffs | * | CASE NO. |
| | * | |
| versus | * | |
| | * | SECTION |
| BP, plc, BP PRODUCTS NORTH AMERICA, | * | |
| INC., BP AMERICA, INC., TRANSOCEAN, LTD., | * | MAGISTRATE |
| TRANSOCEAN OFFSHORE DEEPWATER | * | |
| DRILLING, INC., TRANSOCEAN DEEPWATER | * | |
| INC., HALLIBURTON ENERGY SERVICES, | * | JURY DEMAND |
| INC., AND CAMERON INTERNATIONAL | * | |
| CORPORATION f/k/a COOPER CAMERON | * | |
| CORPORATION | * | |
| | * | |
| Defendants | * | |
| | * | |

*******************************************

**CLASS ACTION COMPLAINT**

Plaintiffs, Bryan C. Carrone and Raymond K. Landry ("Plaintiffs), individually and as representatives of the class defined herein (the "Class"), bring this action against the defendants identified below ("Defendants"), and aver as follows:

**INTRODUCTION**

1.

This is a class action, brought pursuant to Rule 23 of the Federal Rules of Civil

Procedure, to recover damages suffered by Plaintiffs and the Class Members as a result of the oil spill that resulted from the explosion and fire aboard, and subsequent sinking of the oil rig Deepwater Horizon (hereinafter "Deepwater Horizon" or "Oil Rig") on April 20, 2010, at about 10:00 p.m. central time on the outer Continental Shelf, off the Louisiana coast.  Following the sinking of the Oil Rig, approximately 1,000 barrels per day of crude oil have been leaking from the oil well upon which the Deepwater Horizon was performing completion operations, and from the pipe connected to it (drill stack).  The fast-moving oil slick, which has grown to 100 miles long by 45 miles wide, is headed towards the Louisiana coast and has already caused detrimental affects upon the Gulf of Mexico's and Louisiana's marine environments, coastal environments and estuarine areas, which are used by Plaintiffs and the Class Members for the different activities, including fishing and to earn a livelihood.

**PARTIES**

2.

Plaintiff, Bryan C. Carrone, is a citizen of Louisiana who resides within this district in St. Tammany Parish, Louisiana.  Plaintiff is a licensed crab fisherman and owns his own vessel.  Plaintiff also employs a worker who earns his livelihood as a commercial crab fisherman on Plaintiff's vessel in the Gulf of Mexico and in the "coastal zone" (as that term is defined in 43 U.S.C.§ 1331(e)) (the "Coastal Zone") and, as a result of the events described above and below, he has suffered damages that are more fully described below.

3.

Plaintiff, Raymond K. Landry, is a citizen of Louisiana who resides within this district in St. Bernard Parish, Louisiana. Plaintiff earns his livelihood as a commercial crab fisherman in the Gulf of Mexico and in the Coastal Zone and, as a result of the events described above and below, he has suffered damages that are more fully described below.

4.

Defendants herein are:

(a) Transocean, Ltd., ("Transocean, Ltd.") a foreign corporation doing business in the State of Louisiana and within this district;

(b) Transocean Offshore Deepwater Drilling, Inc. ("Transocean Offshore"), a foreign corporation doing business in the State of Louisiana and within this district;

( c) Transocean Deepwater, Inc. ("Transocean Deepwater"), a foreign corporation doing business in the State of Louisiana and within this district;

(d) BP, plc ("BP"), a foreign corporation doing business in the State of Louisiana and within this district;

(e) BP Products North America, Inc. ("BP Products") a foreign corporation doing business in the State of Louisiana and within this district;

(f) BP America, Inc. ("BP America"), a foreign corporation doing business in the State of Louisiana and within this district;

(g) Halliburton Energy Services, Inc. ("Halliburton"), a foreign corporation doing business in the State of Louisiana and within this district; and

(h) Cameron International Corporation f/k/a Cooper-Cameron Corporation ("Cameron"), a foreign corporation doing business in the State of Louisiana and within this district.

## JURISDICTION ADN VENUE

5.

This Court has jurisdiction over this class action pursuant to (1) 28 U.S.C. § 1331(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and it is a class action brought by citizens of a State that is different from the State where at least one of the Defendants is incorporated or does business; (2) 28 U.S.C. § 1331, because the claims asserted herein arise under the laws of the United States of America, including the laws of the State of Louisiana which have been declared, pursuant to 43 U.S.C.§§ 1331 (f)(1) and 1333(a)(2), to be the law of the United States for that portion of the outer Continental Shelf from which the oil spill originated; and (3) 43 U.S.C. § 1331(1), which extends exclusive Federal jurisdiction to the outer Continental Shelf.

6.

Prosecution of this action in this district is proper under 28 U.S.C. § 1391(a)(2) because all the events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTUAL ALLEGATIONS

7.

Transocean, Ltd., Transocen Offshore and Transocean Deepwater (collectively "Transocean") are the owners and/or operators of the Deepwater Horizon, a semi-submersible mobile drilling rig, which was performing completion operations for BP, BP Products and BP America on the outer Continental Shelf, at the site from which the oil spill now originates, on April 20, 2010.

8.

BP, BP Products and BP America (collectively "BP") are the holders of a lease granted by the Minerals Management Service that allows BP to drill for oil and perform oil-production-related operations at the site of the oil spill, and on April 20, 2010 operated the oil well that is the source of the oil spill.

9.

Upon information and believe, Cameron manufactured and/or supplied the Deepwater Horizon's blow-out-preventers ("BOP's") that failed to operate upon the explosion, which should have prevented the oil spill. The BOP's were defective because they failed to operate as intended. As such, Cameron is liable to Plaintiffs and the Class Members pursuant to the Louisiana Products Liability Act in addition to being liable for its negligence.

10.

Haliburton was engaged in cementing operations of the well and well cap and, upon information and belief, improperly and negligently performed these duties, increasing the pressure at the well and contributing to the fire, explosion and resulting oil spill.

11.

At all times material hereto, the Deepwater Horizon was owned, manned, possessed, managed, controlled, chartered and/or operated by Transocean and/or BP.

12.

The fire and explosion on the Deepwater Horizon, its sinking, and the resulting oil spill were caused by the negligence of Defendants, which renders them liable jointly, severally and *in-solido* to Plaintiffs and the Class Members for all their damages.

13.

The injuries and damages suffered by Plaintiffs and the Class Members were caused by Defendants' violations of numerous statutes and regulations, including, but not limited to, statutes and regulations issued by OSHA and the United States Coast Guard, including the requirements to test the sub-sea BOP's at regular intervals.

14.

Defendants knew of the dangers associated with deep water drilling and failed to take appropriate measures to prevent damage to Plaintiffs, the Class Members, Louisiana's and the

Gulf of Mexico's marine and coastal environments and estuarine areas, and the Coastal Zone, where Plaintiffs and the Class Members work and earn a living.

15.

The spilled oil would not simply evaporate off of the surface of the water and is causing dangerous environmental contamination of the Gulf of Mexico and its shorelines, threatening Louisiana's sensitive wetlands and estuarine areas.

16.

The oil spill and the contamination have caused and will continue to cause loss of revenue to persons (and businesses) who are bing prevented from using the Gulf of Mexico and Louisiana's Coastal Zone for diverse activities, including work and to earn a living.

17.

There are many other potential affects from the oil spill that have not yet become known, and Plaintiffs reserve the right to amend this Complaint once additional information becomes available.

## **CLASS DEFINITION**

18.

Plaintiffs bring this action on behalf of themselves and all others similarly situated, who are members of the following Class:

> All Louisiana residents who live or work in, or
> derive income from, the Louisiana "Coastal Zone, "

as that term is defined in 43 U.S.C. § 1331(e), and who have sustained any legally cognizable loss and/or damages as a result of the April 20, 2010 fire and explosion which occurred aboard the Deepwater Horizon drilling rig and the oil spill resulting therefrom.

19.

Excluded from the Class are;

a. the officers and directors of any of the Defendants;

b. any judge or judicial officer assigned to this matter and his or her immediate family; and

c. any legal representative, successor, or assign of any excluded persons or entities.

## CLASS ACTION ALLEGATIONS

20.

a. **Numerosity of the class**

The proposed Class is so numerous that joinder is impractical. The disposition of the claims asserted herein through this class action will be more efficient and will benefit the parties and the Court.

b. **Predominance of Common Questions of Fact and Law**

21.

There is a well-defined community of interest in that the questions of law and fact

common to the Class predominate over questions affecting only individual Class Members and include, but are not limited to, the following:

    a.    Whether defendants caused and/or contributed to the fire, explosion and oil spill;

    b.    Whether defendants' actions were negligent;

    c.    Whether the fire, explosion and oil spill have caused environmental or other damage; and

    d.    The amount of damages Plaintiffs and the Class Members should receive in compensation.

**c.**    **Typicality**

22.

Plaintiffs and the Class Members have suffered similar harm as a result of Defendant's actions.

**d.**    **Adequacy of Representation**

23.

Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class because their interests do not conflict with the interests of the Class Members they seek to represent. Plaintiffs have no claims antagonistic to those of the Class. Plaintiffs have retained counsel competent and experienced in complex class actions and maritime and environmental litigation.

e.       **Superiority**

24.

A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual litigation of the claims of all Class Members is impracticable. Even if every Class Member could afford individual litigation, the court system could not. It would be unduly burdensome to this Court in which individual litigation of thousands of cases would proceed. Individual litigation presents a potential for inconsistent or contradictory judgments, and the prospect of a race for the courthouse and an inequitable allocation of recovery among those with equally meritorious claims. Individual litigation increases the expenses and delay to all parties and the court system in resolving the legal and factual issues common to all claims treated to the Defendants' conduct alleged herein. By contrast, a class action presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

25.

The various claims asserted in the action are also certifiable under the provisions of the Rules 23(b)(1) and/or 23(b)(3) of the Federal Rules of Civil Procedure because:

    a.       The prosecution of separate actions by thousands of individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, thus establishing incompatible standards of conduct

       for Defendants;

b.    The prosecution of separate actions by individual Class Members would also create the risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class Members who are not parties to such adjudications and would substantially impair or impede their ability to protect their interests; and

c.    The questions of law or fact common to the Members of the Class predominate over any questions affecting only individual Members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## FIRST CAUSE OF ACTION (NEGLIGENCE)

26.

Plaintiffs, on behalf of themselves and the Class Members, repeat, reiterate, and reallege each and every allegations set forth above with the same force and effect as if copied herein.

27.

The fire, explosion and resulting oil spill was caused by the concurrent negligence of the Defendants.

28.

Upon information and belief, Plaintiffs aver that the fire, explosion and resulting oil spill

was caused by the joint negligence and fault of the Defendants in the following non-exclusive particulars:

    a.    Failing to properly operate the Deepwater Horizon;

    b.    Operating the Deepwater Horizon in such a manner that a fire and explosion occurred onboard, causing it to sink and resulting in an oil spill;

    c.    Failing to properly inspect the Deepwater Horizon to assure that its equipment and personnel were fit for their intended purpose;

    d.    Acting in a careless and negligent manner without due regard for the safety of others;

    e.    Failing to promulgate, implement and enforce rules and regulations pertaining to the safe operations of the Deepwater Horizon which, if they had been so promulgated, implemented and enforced, would have averted the fire, explosion, sinking and oil spill;

    f.    Operating the Deepwater Horizon with untrained and unlicensed personnel;

    g.    Inadequate and negligent training and hiring of personnel;

    h.    Failing to take appropriate action to avoid or mitigate the accident;

    i.    Negligent implementation of policies and procedures to safely conduct offshore operations in the Gulf of Mexico;

    j.    Employing untrained or poorly trained employees and failing to properly train

        their employees;

k.      Failing to ascertain that the Deepwater Horizon and its equipment were free from defects and/or in proper working order;

l.      Failure to timely warn;

m.     Failure to timely bring the oil release under control;

n.      Failure to provide appropriate accident prevent equipment;

o.      Failure to observe and read gauges that would have indicated excessive pressures in the well;

p.      Failure to react to danger signs;

q.      Providing BOP's that did not work properly;

r.      Conducting well and well cap cementing operations improperly;

s.      Acting in a manner that justifies imposition of punitive damages; and

t.      Such other acts of negligence and omissions as will be shown at the trial of this matter; all of which acts are in violation of the laws of Louisiana and Federal law applicable on the outer Continental Shelf.

29.

In addition, and in the alternative, the fire, explosion, sinking and resulting oil spill were caused by defective equipment, including the BOP's, which were in the care, custody, and control of Defendants and over which the Defendants had *garde*. Defendants knew or should

have known of these defects and Defendants are, therefore, liable for them.

30.

The injuries to Plaintiffs and the Class Members were also caused by or aggravated by the fact that Defendants failed to take necessary actions to mitigate the danger associated with their operations.

31.

In addition to the negligent actions described above, and in the alternative thereto, the injuries and damages suffered by Plaintiffs and the Class Members were caused by the acts and/or omissions of the Defendants that are beyond proof by the Plaintiffs and the Class Members, but which were within the knowledge and control of the Defendants, there being no other possible conclusion than that the fire, explosion, sinking and oil spill resulted from the negligence of Defendants.  Furthermore, the fire, explosion, sinking and the resulting oil spill would not have occurred had the Defendants exercised the high degree of care imposed on them and Plaintiffs, therefore, plead the doctrine of *res ipsa loquitur*.

32.

Plaintiffs and the Class Members are entitled to a judgment finding Defendants liable to Plaintiffs and the Class Members for damages suffered as a result of Defendants' negligence and awarding Plaintiffs and the Class Members adequate compensation therefor in amounts determined by the trier of fact.

## SECOND CAUSE OF ACTION

## (OIL POLLUTION ACT)

33.

Plaintiffs, on behalf of themselves and the Class Members, repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if fully copied herein.

34.

The Oil Pollution Act imposes liability upon a "responsible party for a...facility from which oil is discharged...into or upon navigable waters or adjoining shorelines" for the "damages that result from such incident." 33 U.S.C. § 2702.

35.

Section 2702(b)(2)(C) provides for the recovery of "[d]amages for subsistence use of natural resources, which shall be recoverable by any claimant who so uses natural resources which have been injured, destroyed, or lost, without regard to the ownership or management of the resources."

36.

The Coast Guard has named BP as the responsible party. Therefore, BP is liable pursuant to Section 2702 for all damages that result from the oil spill.

37.

As a result of the oil spill, Plaintiffs and the Class Members have not been able to use

natural resources (air and water, and potentially wetlands and other areas and spaces that have and/or may become contaminated by the spilled oil) for their subsistence, and they are entitled to recover from BP for such damages in amounts to be determined by the trier of fact.

38.

Section 2702(b)(2)(E) provides for the recovery of "[d]amages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant."

39.

As a result of the oil spill, Plaintiffs and the Class Members have suffered the type of damages that may be recovered pursuant to Section 2702(b)(2)(E), and they demand compensation therfor from BP in amounts to be determined by the trier of fact.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class Members demand judgment against Defendants, jointly, severally and *in solido,* as follows:

    a.    An order certifying the Class for the purpose of going forward with any one or all of the causes of action alleged herein; appointing Plaintiffs as Class Representatives; and appointing undersigned counsel as counsel for the Class;

    b.    Economic and compensatory damages in amounts to be determined at trial, but not less than the $5,000,000.00 required by the Class Action Fairness Act which

establishes one of this Court's bases of jurisdiction to hear this case;

c. Punitive damages;

d. Pre-judgement and post-judgment interest at the maximum rate allowable by law;

e. Attorney's fees and costs of litigation;

f. Such other and further relief available under all applicable state and federal laws and any relief the Court deems just and appropriate; and

g. A trial by jury as to all Defendants.

**RESPECTFULLY SUBMITTED BY;**

MICHAEL HINGLE & ASSOCIATES, LLC

 /s/Michael A. Hingle
Michael A. Hingle (LA Bar No. 6943)
Ronald J. Favre (LA Bar No. 5479)
Bryan A. Pfleeger (LA Bar No. 23896)
220 Gause Blvd.
Slidell, LA 70458
Telephone (985) 641-6800
Fax: (985) 646-1471